UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

TIJUANA DECOSTER,

     Plaintiff,

    v.

XAVIER BECERRA, *Secretary of the
U.S. Department of Health and Human
Services, National Institutes of Health*,

     Defendant.

Civil Action No. TDC-21-2195

**MEMORANDUM OPINION**

Plaintiff Tijuana Decoster has filed this civil action against the United States Secretary of Health and Human Services ("HHS"), alleging that she was subjected to unlawful race discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (2018), while working at the National Institutes of Health ("NIH"), a component agency within the United States Department of Health and Human Services. Pending before the Court is HHS's Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

From April 2007 through February 2020, Decoster served as the Chief Grants Management Officer in the National Institute of Neurological Disorders and Stroke, a division within NIH. During that time period, Decoster's second-level supervisor was Robert Finkelstein, the Director

of Extramural Affairs. From 2007 to 2018, Decoster received positive performance evaluations. Beginning in 2019, however, the relationship between Decoster and Finkelstein "became strained." Compl. ¶ 10, ECF No. 1. According to Decoster, Finkelstein "humiliated her in front of her peers" and "frequently singled Decoster out in front of her colleagues and peers and accused her of failing in her position." *Id.* ¶¶ 10, 22. He "spoke to Decoster with contempt," *id.* ¶ 11, and "frequently treated her with disdain when they met," *id.* ¶ 19. He also accused her of problems in the work organization for which she was not responsible, creating a tense work environment. Finkelstein did not show the same contempt toward Decoster's non-African American colleagues and often praised her Asian American colleague, who was her "counterpart" in the Budget Office. *Id.* ¶ 11. Decoster complained about the work environment to both Finkelstein and the Human Resources Department, but no corrective action occurred.

In August 2019, Finkelstein met with Decoster and informed her that he was going to "fire her" and that the results from a 2017 survey, in which her staff had complained about her, would support such a decision. *Id.* ¶ 12. That same month, he issued to her a Letter of Expectation regarding her performance and stated that he would hold weekly meetings with her to review her progress, but he never did so. At some later point, Decoster filed an Equal Employment Opportunity ("EEO") complaint. On December 6, 2019, Finkelstein placed Decoster on a 60-day Opportunity to Demonstrate Acceptable Performance plan ("ODAP"). As part of the ODAP, Finkelstein was again to meet weekly with Decoster, but he failed to do so, leading Decoster to believe "he was setting her up for removal." *Id.* ¶ 16.

Also in August 2019, Decoster requested and received approval from the Executive Officer to be placed on a detail to another office to remove herself from Finkelstein's supervision. However, in December 2019, Finkelstein informed Decoster that rather than starting that detail,

she could instead do a terminal detail, meaning that her employment with NIH would end at the conclusion of the detail. Finkelstein also stated that the detail would only be allowed if Decoster dismissed her EEO complaint. Then, in January 2020, Finkelstein informed Decoster that if her Asian American colleague stated that she could work with Decoster, he would consider allowing her to remain employed. In February 2020, before the ODAP period was scheduled to end on February 19, 2020, Decoster resigned.

Decoster filed a formal discrimination complaint with NIH, and on May 28, 2021, NIH issued a Final Agency Decision. On August 26, 2021, Decoster filed the instant Complaint against HHS, alleging Title VII claims of race discrimination based on a constructive discharge and a hostile work environment and of unlawful retaliation.

## DISCUSSION

In its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), HHS seeks dismissal of the Complaint, arguing that (1) Decoster failed to state a plausible hostile work environment claim; (2) she failed to state a plausible constructive discharge claim; and (3) the retaliation claim is barred because Decoster prevailed on that claim in the administrative proceedings.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable

3

to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

HHS filed its Motion as a Motion to Dismiss and attached several exhibits in support of the Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted, however, to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, the attached exhibits are two Final Agency Decisions issued by NIH on November 13, 2020 and May 28, 2021, the December 6, 2019 ODAP issued by Finkelstein to Decoster, and a Form SF-50 Notification of Personnel Action reflecting Decoster's resignation effective February 7, 2020. Where the Complaint specifically discusses the ODAP such that it is fairly deemed to be integral to the Complaint, and Decoster does not challenge its authenticity, the Court will consider it in deciding the Motion. The Court will not consider the two Final Agency Decisions and the Form SF-50 which are not relied upon in the Complaint for any purpose at issue in the Motion.

## II.   Hostile Work Environment

In the Motion, HHS argues that Decoster has failed to state sufficient facts to support a plausible hostile work environment claim. A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

4

working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To prove such a claim, a plaintiff must show that (1) the plaintiff experienced unwelcome conduct; (2) the conduct was based on the plaintiff's race, color, religion, national origin, age, or sex; (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006).  HHS argues that Decoster has not plausibly alleged the second and third elements, that the conduct was based on race and that it was sufficiently severe or pervasive.

As to the third element, a court's determination of whether the conduct was sufficiently severe and pervasive to create an objectively hostile or abusive environment "is made by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Holloway v. Maryland*, 32 F.4th 293, 300-01 (4th Cir. 2022) (quoting *Boyer-Liberto*, 786 F.3d at 277). Notably, "'[r]ude treatment,' 'callous behavior,' or 'routine difference of opinion and personality conflict,' without more, will not suffice." *Id.* at 301 (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008)).

Here, the hostile work environment claim is based on allegations that Finkelstein humiliated her by "frequently singl[ing] Decoster out in front of her colleagues and peers and accused her of failing in her position," "spoke to Decoster with contempt," "frequently treated her with disdain," blamed her for issues within the work organization, threatened to fire her once, provided her with a Letter of Expectation, and placed her on an ODAP. Compl. ¶¶ 10-15. Even taken together, these allegations do not describe conduct severe or pervasive enough to plausibly

5

state a claim for a hostile work environment. Several of these allegations, including the issuance of the Letter of Expectation and the ODAP, consist of a supervisor providing negative performance evaluations and feedback which are sometimes necessary in a workplace and do not constitute the kind of conduct that would underlie a hostile work environment. The remainder of the allegations largely consists of general characterizations of Finkelstein's tone or manner of speaking while interacting with Decoster which do not provide specific facts that would demonstrate that Finkelstein engaged in the kind of "discriminatory intimidation, ridicule, and insult" that characterizes a hostile work environment claim. *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21). In *Holloway*, the United States Court of Appeals for the Fourth Circuit held that allegations that a supervisor criticized the plaintiff's leadership and budget management in meetings, scheduled a meeting to start before the plaintiff was scheduled to arrive and then yelled and slammed documents onto a desk during the meeting, required him to sign a disciplinary evaluation, required him to address the supervisor as "sir," and failed to honor him at an employee recognition event, and that other employees were surveyed about the plaintiff's leadership and whereabouts during the work day, were insufficient "to establish an abusive environment" so as to withstand dismissal. 32 F.4th at 301. In another instance, the Fourth Circuit affirmed the dismissal of a hostile work environment claim because allegations of a supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harping on a mistake" by the plaintiff, making "snide comments" to the plaintiff, "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" the plaintiff's use of leave and lack of compliance with directives fell "far short of being severe or pervasive enough to establish an abusive environment." *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (internal alterations omitted). In light of

this precedent, the Court finds that Decoster's allegations, which describe conduct less specific and less severe than was present in *Holloway* and *Buchhagen*, likewise fail to state a viable hostile work environment claim.   The Motion to Dismiss will be granted as to the hostile work environment claim.

### III.   Constructive Discharge

HHS also argues that Decoster has failed to state a constructive discharge claim.  Decoster asserts a claim of race discrimination based on a constructive discharge, alleging that Finkelstein placed her on a Letter of Expectation and an ODAP "as a set up for her unjustified termination," that he "humiliated [Decoster] in front of her peers, treated her with disdain, [and] insisted that she work a terminal detail," and that these actions compelled her to resign.  Compl. ¶ 22.

A claim of a discriminatory constructive discharge arises when an employee resigns because the "circumstances of discrimination" were "so intolerable that a reasonable person would resign," such that a court will treat the "resignation as though the employer actually fired" the employee. *Green v. Brennan*, 578 U.S. 547, 560 (2016). Thus, the test is "objective intolerability," not "deliberateness, or a subjective intent to force a resignation." *EEOC v. Consol. Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) (internal citation omitted).  HHS argues that Decoster's allegations fail to state a plausible constructive discharge claim because they "do not rise to the level of [her] having 'no choice' but to resign." Mot. Dismiss at 6, ECF No. 18-1.

To the extent that Decoster's claim is that her work environment was so hostile that she had no choice but to resign, the Court finds that, for similar reasons to those discussed above in relation to the hostile work environment claim, the allegations are insufficient to state a plausible constructive discharge claim on that basis. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (holding that for a constructive discharge claim based on a hostile work environment,

7

"the plaintiff must show 'something more' than the showing required for a hostile work environment claim" (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004))); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (holding that allegations that supervisors "yelled" at the plaintiff, "told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" did not "establish . . . objectively intolerable working conditions" sufficient to support a constructive discharge claim ).

Notably, however, the Supreme Court has stated that a claim of "constructive discharge resulting from . . . 'hostile work environment'" is only "one subset of Title VII constructive discharge claims." *Penn. State Police v. Suders*, 542 U.S. 129, 143 (2004). Courts have recognized that plaintiffs can also establish a constructive discharge claim by showing that, without regard to the hostility of the work environment, the "employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns." *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002); *see also Burks v. Okla. Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996) ("This court has recognized that an employee can prove a constructive discharge by showing that she was faced with a choice between resigning or being fired."). Under this theory, an environment in which an employer makes clear to an employee her termination was imminent and that "the axe was about to fall" may be objectively intolerable. *Univ. of Chi. Hosps.*, 276 F.3d at 332. In *University of Chicago Hospitals*, for example, the plaintiff arrived at work one morning to find that her belongings had been packed up and her office was being used for storage. 276 F.3d at 332. In conjunction with a supervisor's comment that one of the plaintiff's mistakes had been "the last straw," the court held that this evidence was sufficient to defeat the employer's summary judgment motion. *Id.* at 332-33.

However, a plaintiff must still allege more than a "prospect of discharge lurk[ing] in the background." *Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331, 332-34 (7th Cir. 2004) (holding that a plaintiff who retired after her supervisor informed her that he would recommend that her contract not be renewed was not constructively discharged because "the prospect of being fired at the conclusion of an extended process is not itself a constructive discharge").

Here, Decoster's allegations do not sufficiently state a plausible claim that her work conditions were intolerable based on imminent termination. Though she alleges that Finkelstein told her in August 2019 that he was going to "fire her," Compl. ¶ 12, she was then placed into a months-long process that may or may not have resulted in her discharge. In August 2019, he provided her with a Letter of Expectation detailing his recommendations for her performance, and he placed her on an ODAP in December 2019, both of which are tools designed to give her an opportunity to improve any allegedly deficient performance. The Letter stated Finkelstein's "expectations and constructive recommendations for the successful performance of [her] critical job duties," and the ODAP was a "60-day opportunity period . . . in which to demonstrate acceptable performance." ODAP at 1, Mot. Dismiss Ex. 3, ECF No. 18-4. In December 2019, Finkelstein offered her, but did not require her to accept, a terminal detail which would result in the end of her employment at its conclusion. Decoster also alleges that Finkelstein's failure to meet weekly with her, as required under the terms of the Letter of Expectation and ODAP, "led her to believe he was setting her up for removal," Compl. ¶ 16. However, while these allegations could support an inference that Finkelstein no longer wanted Decoster to work at NIH or that Decoster thought she would be terminated, they do not plausibly establish that her termination was clear and imminent.

By its own terms, the ODAP provided that at the end of the 60-day period, Finkelstein would "conduct a formal review of [Decoster's] performance" and would inform her if she passed "within 7 days." ODAP at 5. At that point, if her performance had not improved, Finkelstein could "recommend[]" that she be removed from federal service, reflecting that he did not necessarily even have the authority to terminate her. *Id.* Though Decoster resigned toward the end of the 60-day period, the Complaint does not provide any factual allegations as to the results of the ODAP, including whether Finkelstein had conducted the required review of her performance and whether she was informed that she was not performing at a passing level. If anything, the Complaint suggests that her termination was not inevitable. Specifically, Decoster alleges that in January 2020, during the pendency of the ODAP, Finkelstein stated that "he would consider allowing her to remain employed" if her Asian American colleague was able to work with her. Compl. ¶ 18. The fact that the earlier threat to terminate Decoster, made before the Letter of Expectation and ODAP were issued, was later qualified significantly undermines the claim that her termination was imminent. *Cf. Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 680 (7th Cir. 2010) (concluding that an employer should have been granted judgment as a matter of law because an employee who was once threatened with termination and then had his employer express a desire to retain him had not been constructively discharged).

Moreover, though not specifically addressing this theory, the Fourth Circuit has concluded in similar circumstances involving a specific threat of termination that allegations that a supervisor "told [the plaintiff] to communicate more clearly, provided him with a list of performance concerns, and threatened to fire him" then "ostracized him," "temporarily refused to verify his employment for a potential replacement job," and "took . . . steps to 'negatively affect' his visa status" were insufficient to establish the intolerability required for a constructive discharge claim.

10

*Ofoche v. Apogee Med. Grp., Va., P.C.*, 815 F. App'x 690, 691-92 (4th Cir. 2020). Where Decoster has failed to allege facts supporting a conclusion that her termination was clear and imminent at the time that she resigned, the Court finds insufficient allegations to support a constructive discharge claim.

The Court further notes that Decoster's allegations that the constructive discharge was the result of race discrimination were also deficient. Decoster's sole allegation on this element is grounded in a comparison to other colleagues, specifically that Finkelstein did not speak to non-African American employees, including one Asian American colleague—her "counterpart in the Budget Office"—with the same disdain and contempt directed to her. *See* Compl. ¶ 11. However, she has not alleged facts sufficient to show that she and these other colleagues were similarly situated. Notably, Decoster acknowledges that Finkelstein's accusations that she was responsible for problems in the work organization followed an employee survey, the results of which included complaints made by Decoster's staff. Though Decoster provides explanations for why the complaints were unjustified, she does not assert that any of her colleagues allegedly treated more favorably by Finkelstein were the subject of similar survey results and complaints. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010) (holding that there was no "plausible basis" for believing another employee was similarly situated to the plaintiff where there were no allegations that the employee had engaged in comparable behavior). Particularly where Finkelstein had been Decoster's supervisor for 12 years, dating back to 2007, without any allegedly discriminatory treatment until 2019, these limited allegations are not sufficient to support a plausible claim that any constructive discharge was based on race discrimination. The Motion will therefore be granted on the constructive discharge claim.

11

## IV.   Retaliation

Finally, as to Decoster's retaliation claim, HHS argues that it is entitled to judgment as a matter of law "because it has already been adjudicated in [Decoster's] favor" in that, at the administrative level, NIH "already determined" that she was subject to retaliation. Mot. Dismiss at 10. HHS does not contest NIH's previous finding on the merits of the retaliation claim. Decoster counters that the Court should not dismiss the claim because although "[s]he does not seek to appeal [NIH's] finding," she now seeks to challenge NIH's "failure to award an appropriate amount of back pay and compensatory damages" at the administrative level. Opp'n at 6, ECF No. 19.

However, "Title VII does not authorize a federal-sector employee to bring a civil action alleging only that" the administrative agency's "remedy was insufficient." *Laber v. Harvey*, 438 F.3d 404, 423 (4th Cir. 2006). To "properly . . . claim entitlement to a more favorable remedial award, the employee must place the employing agency's discrimination at issue." *Id.* Thus, as a matter of law, Decoster's claim cannot proceed if she seeks to challenge only NIH's remedy. *See id.* at 424. Though Decoster's brief posits that "[s]he does not seek to appeal [NIH's] finding," only its remedy, Opp'n at 6, her Complaint does not rely on or adopt the NIH's administrative decision but instead solely states factual allegations in support of her retaliation claim. *See* Compl. ¶¶ 27-29. Because the Complaint does not allege NIH's finding of retaliation or assert that it is binding on this Court, there is no present deficiency in the Complaint, and the Court will deny the Motion without prejudice, subject to clarification from Decoster. If Decoster acknowledges that the agency's determination on the issue of retaliation is now at issue in this case, she may proceed with her retaliation claim in order to seek a more favorable remedy but may not "require the district court to make a finding of liability" based on NIH's finding. *See Laber*, 438 F.3d at 424 n.20. If

she chooses not to place NIH's finding on retaliation at issue, the Court will dismiss the retaliation claim.

## CONCLUSION

For the foregoing reasons, HHS's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Count 1 (constructive discharge) and Count 2 (hostile work environment) and denied without prejudice as to Count 3 (retaliation). A separate Order shall issue.


Date:   August 3, 2022

THEODORE D. CHUANG
United States District Judge

13